UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

COLUMBUS FARMERS MARKET, LLC
et al.,

                    Plaintiffs,

          v.

FARM FAMILY CASUALTY INSURANCE
COMPANY, et al.,

                    Defendants.

HON. JEROME B. SIMANDLE

Civil Action
Nos. 05-2087

**OPINION**

---

APPEARANCES:

William R. Herman, Esq.
LAW OFFICES OF WILLIAM R. HERMAN
59 Betts Drive, Suite 100
Washington Crossing, PA 18977
     and
Ralph A. Jacobs, Esq.
RALPH A. JACOBS & ASSOCIATES LLC
34 Tanner Street
Haddonfield, New Jersey 08033
     Attorneys for Plaintiffs Columbus Farmers Market, LLC,
     Columbus Flea World, LLC, John C. Ackerman, Jr. and Charles
     F. Pratt

Edward R. Murphy, Esq.
James W. Watson, Esq.
MURPHY & O'CONNOR, LLP
Commerce Center, Suite 130
1810 Chapel Avenue West
Cherry Hill, NJ 08002-4607
     Attorneys for Farm Family Casualty Insurance Company

Marc L. Dembling, Esq.
METHFESSEL & WERBEL, P.C.
3 Ethel Road
P.O. Box 3012
Edison, NJ 08818
     Attorney for Lead Underwriter of Certain Underwriters at
     Lloyd's London Policy No. WAPC 20000701-002, WAPC 20010701-
     005, WAPC 20020701-010, WAPC 20030701-028

**SIMANDLE**, District Judge:

The plaintiffs in this matter are two entities (Columbus Farmers Market, LLC and Columbus Flea World, LLC) that own and/or operate a large flea market in Burlington County, New Jersey and the principals of these entities (John C. Ackerman, Jr. and Charles F. Pratt)(collectively, the "Plaintiffs").[1]  The Plaintiffs are also defendants in a related case pending before this Court, <u>Arista Records, Inc. v. Flea World</u> No. 03-2670 (D.N.J. June 3, 2003)(the "Arista Litigation"), in which they face potentially millions of dollars in damages for contributory copyright infringement and vicarious liability related to the sale of counterfeit and contraband compact discs by third-party vendors at the flea market.  The present matter is an insurance case in which Plaintiffs (1) seek a declaration that the insurance policies at issue give rise to a duty to defend Plaintiffs in the Arista Litigation, (2) claim that the insurers breached their respective insurance contracts with Plaintiffs, and (3) seek a declaratory judgment that the insurers have a duty to indemnify Plaintiffs against all claims in the Arista Litigation.

---

[1]  Columbus Farmers Market, LLC and Columbus Flea World, LLC shall be referred to as the "Corporate Plaintiffs" and Ackerman, and Pratt shall be referred to as the "Individual Plaintiffs." Collectively, the four parties will be referred to as the "Plaintiffs."

Presently before the Court are the following motions: (1) Plaintiffs' motion for partial summary judgment on the issue of whether the defendant-insurers have a duty to defend Plaintiffs in the Arista Litigation [Docket Item No. 12]; (2) defendant-insurer Lead Underwriter of Certain Underwriters at Lloyd's London ("Lloyd's") motion for summary judgment [Docket Item No. 14];[2] and (3) defendant-insurer Farm Family Casualty Insurance Company's ("Farm Family") cross-motion for summary judgment [Docket Item No. 17]. Central to these three motions is whether the insurance policies at issue provide coverage under the "advertising injury" provision for the contributory copyright infringement and vicarious liability claims alleged in the Arista Litigation. A second and related issue is whether coverage is excluded under a variety of defenses raised by Lloyd's and/or Farm Family. Third, if the Court holds that Lloyd's and Farm Family have a duty to defend, the Court must determine how the amount payable to Plaintiffs should be allocated between the underwriters who issued the policies. Finally, the Court must address Lloyd's and Farm Family's arguments that, because Lloyd's and Farm Family have no duty to Plaintiffs in the Arista Litigation, summary judgment is appropriate on the issue of Lloyd's and Farm Family's duty to indemnify.

---

[2] The policies at issue in this matter that relate to Lloyd's are Policy No. WAPC 20000701-002, WAPC 20010701-005, WAPC 20020701-010, and WAPC 20030701-028.

For the reasons expressed in this Opinion, Plaintiffs' motion for partial summary judgment will be granted in part and denied in part.  The Court will grant Plaintiffs' motion pertaining to Lloyd's and Farm Family's duty to defend Plaintiffs in the Arista Litigation under the insurance policies in effect from July 1, 1999 through July 1, 2003.  However, Plaintiffs' motion will be denied relating to the policy in place from July 1, 2003 to July 1, 2004 because, as Plaintiffs concede, there is no coverage under the policy that was in place between July 1, 2003 through July 1, 2004.   The Court will also deny Plaintiffs' motion as to the issues of (a) whether Columbus Flea World, LLC is covered by the Farm Family insurance policy (it is not) and (b) whether the defense costs should be allocated equally among the three underwriters (they will not be and the Court will require additional submissions from the parties as discussed in Section III.D, _infra_.)  In addition, Farm Family's motion for summary judgment on the issue of the duty to indemnify will be denied as to Columbus Farmers Market, LLC and granted as to Columbus Flea World, LLC; and Lloyd's motion for summary judgment will be denied with respect to its three policies pre-dating July 1, 2003 and granted with respect to the July 1, 2003 - July 1, 2004 policy.

I.   <u>BACKGROUND</u>

     <u>A.   **The Parties**</u>

This action is a diversity action brought pursuant to 28 U.S.C. §§ 1332(a)(1) and (2).  Plaintiffs include Columbus Farmers Market, LLC, Columbus Flea World, LLC and the principals of these limited liability companies, John C. Ackerman, Jr. and Charles F. Pratt.  The Plaintiffs operate the Columbus Farmers Market (the "Market"), one of the largest flea markets on the east coast.  The ownership and operation of the Market is divided between the two Corporate Plaintiffs.  See <u>Arista Records, Inc.</u> <u>v. Flea World, Inc.</u>, No. 03-2670, 2006 U.S. Dist. LEXIS 14988, *8 (D.N.J. Mar. 31, 2006).  Currently, the outdoor market is operated and maintained by Columbus Flea World, LLC, while the indoor portion of the market is operated by Columbus Farmers Market, LLC.  <u>Id.</u>  Defendants are Farm Family Casualty Insurance Company and two underwriters affiliated with Lloyd's, London –– J.A. Tweedie ("Tweedie") and M.W. Lawrence ("Lawrence").[3]

     B.   **The Insurance Policies**

In 1999, Farm Family issued a commercial lines insurance policy with comprehensive general liability ("CGL") coverage to Columbus Farmers Market, LLC for the period of July 1, 1999 to July 1, 2000.  Tweedie was an underwriter of an insurance policy

---

    [3] Tweedie and Lawrence shall be referred to collectively as "Lloyd's."

with CGL coverage issued for the period July 1, 2000 to July 1, 2001 and another policy covering the period of July 1, 2001 to July 1, 2002.  Lawrence was an underwriter on the policy of July 1, 2002 to July 1, 2003.

All policies (whether issued by Farm Family, Tweedie or Lawrence) were issued on forms prepared by Insurance Services Office, Inc. ("ISO").  Specifically, Farm Family issued CGL Policy No. 2903x0155 to Columbus Farmers Market, LLC. (Plaintiffs' Br. at Ex. 7.)  The Farm Family CGL Policy states, in relevant part:

**SECTION 1 COVERAGES....**

**COVERAGE B.   PERSONAL AND ADVERTISING INJURY LIABILITY**

   1.   <u>Insuring Agreement</u>.

      a.   **We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "advertising injury" to which this coverage part applies.  We will have the right and duty to defend any "suit" seeking those damages.**  We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result....  But

         1.   The amount we will pay for damages is limited as described in LIMITS of INSURANCE

      b.   This insurance applies to: . . .

         1.   "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

      2. **"Advertising injury" caused by an offense committed in the course of advertising your goods, products or services**....

  2.  <u>Exclusions</u>.

    This insurance does not apply to:

    a. "Personal injury" or "advertising injury":

        (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

        (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

        (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;...

**SECTION V - DEFINITIONS**

  1. **"Advertising injury" means injury arising out of one or more of the following offenses:**

    a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b.  Oral or written publication of material that violates a person's right of privacy;

    c.  Misappropriation of advertising ideas or styles or doing business; or

    d.  **Infringement of copyright, title or slogan**

(<u>Id.</u>)(emphasis added).  Columbus Farmers Market is the applicant

and a named insured on the policies.  In addition, the parties do

not dispute that Ackerman and Pratt are insured as members of

Columbus Farmers Market, LLC under Section II.1 of the insurance policies.  (Pl.'s Br. at Ex. 7.)[4]

For the policy periods between July 1, 2000 to July 1, 2001, July 1, 2001 to July 1, 2002 and July 1, 2002 to July 1, 2003, the relevant Lloyd's policies issued to Plaintiffs contained ISO form CG 00-01-10-93.  (Lloyd's Counter-statement of Additional Material Facts ("CAMF") ¶ 9, 10.)  Specifically, the relevant Lloyd's policies were WAPC 20000701-002, WAPC 20001701-005 and WAPC 20020701-010.  (Pl.'s Br. at Ex. 8-10.)[5]  It is not disputed that Columbus Farmers Market, LLC, Columbus Flea Market, LLC and Ackerman and Pratt are named as insured on these policies.

As discussed above, the policies provide, in part that the insured "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'advertising injury'" . . . ."  (Plaintiffs' Br. at Ex. 7, Section I.B.1.a).  The policies also contain a duty to defend, stating in pertinent part, that the insurer "will have the right and duty to defend any 'suit' seeking those damages."  (Id.)  Of note is the fact that although the policies define the phrase "advertising

---

[4]  For the Farm Family policy in place between July 1, 1999 and July 1, 2000, Columbus Flea World, LLC was not a named insured or an applicant for insurance.

[5]  As discussed infra, Lloyd's policy covering July 1, 2003 to July 1, 2004 (derived from ISO CG 00-01-10-01) is different from the other four policies issued between July 1, 1999 and July 1, 2003.  (Lloyd's Br. at Ex. 3.)

injury," none of them contains a definition of "advertising." (Pl.'s Statement of Undisputed Facts ("PSUF") ¶ 22.)  In the policy covering July 1, 2003 to July 1, 2004, Lloyd's changed the language of the policy (derived from ISO form CG 00-01-10-01). The July 1, 2003 policy defines the term "personal and advertising injury" as an injury "arising out of...(g) [i]nfringing upon another's copyright, trade dress or slogan *in your 'advertisement.'*"  (Lloyd's Br. at Ex. 3.)(emphasis added).

C.  **The Arista Litigation**

On June 3, 2003, a number of record companies who are members of the Recording Industry Association of America ("RIAA") instigated the Arista Litigation by filing a complaint against Plaintiffs.  The complaint alleges contributory copyright infringement and vicarious liability.  Specifically, the RIAA asserts that the Market is a "'pirate bazaar'" where many vendors "sell pirated and counterfeit compact discs and cassette tapes in violation of federal copyright and state laws."  (Pl.'s Br. at Ex. 16, ¶ 38.)  In Count I of its complaint in the Arista Litigation, the RIAA alleged contributory copyright infringement, claiming that Plaintiffs "have engaged and continue to engage in a business of knowingly and systematically inducing, causing and/or materially contributing to the . . . unauthorized reproduction and/or distribution of copies of [copyrighted recordings owned by RIAA members] and thus to the infringement of

9

[the RIAA members'] copyrights . . . ."  (Id. ¶ 44.)  In Count
II, the RIAA alleged vicarious liability for copyright
infringement, claiming that Plaintiffs "had the right and ability
to supervise and/or control the infringing conduct of their
vendors" and that they "have derived a direct financial benefit .
. . from the increased traffic to their premises resulting from
the 'draw' of infringing recordings . . . ."  (Id. at ¶ 53-54.)
According to the complaint in the Arista Litigation, the
copyright infringement is alleged to have occurred in (1) June of
2000; (2) October, November and December of 2001; (3) July,
August, and November of 2002; and (4) April and May of 2003.
(Pl.'s Statement of Undisputed Facts ¶ 43.)

     According to the RIAA -- and relevant to this action -- one
way Plaintiffs allegedly materially contributed to copyright
infringement was by advertising and promoting the Market,
including "advertising on their website the availability of sound
recordings on the premises."  (Pl.'s Br. at Ex. 16, ¶ 33.)  In
addition, the RIAA's complaint states that "[t]he availability of
cheap, infringing music on the premises . . . acts as a 'draw'
for customers, enabling the owners and operators to reap the
financial benefits of increased attendance, which results in more
vendors and higher booth rental fees, as well as revenue from
concessions and the like."  (Id. ¶ 32.)

On March 31, 2006, this Court issued an opinion and order holding that the Corporate Plaintiffs were liable for contributory copyright infringement and were vicariously liable for copyright infringement to the RIAA. Arista Records, Inc., 2006 U.S. Dist. LEXIS at *1. The Court stated that a party is liable for contributory copyright infringement if the party "(a) had knowledge of infringing activity and (b) 'induced, caused, or materially contributed to the infringing conduct of another.'" Id. at *44-45 (citing Gershwin Publ. Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1963)). Accordingly, the Court held that the Corporate Plaintiffs contributorily infringed because they had at least constructive knowledge of the infringement and "materially contributed" to the direct infringement of the RIAA members' copyrights, in part, by "provid[ing] extensive advertising for the Market (including maintaining a web site and organizing holiday-themed events) and work[ing] to attract customers to the Market . . . ." Id. at *52. In addition, the Court held that "a party is vicariously liable for copyright infringement if it (1) can supervise or control the premises under which infringing material is sold and (2) obtained a direct financial benefit from the infringing activities." Id. at *29. Again, the Court held the Corporate Plaintiffs liable, finding that the Corporate Plaintiffs had the right and ability to control the Market, id at 30, and obtained a

11

financial benefit because the sale of counterfeit and pirated CDs was a "draw" to the Market.  Id. at 40.  Thus, this Court held that these Corporate Plaintiffs were liable for contributory copyright infringement and vicarious copyright infringement due in no small measure to their advertising efforts to attract customers to purchase sound recordings, including the counterfeit items, in violation of the Copyright Act.

### D.   **Notice to the Plaintiffs and Denial of Coverage**

The original complaint in the Arista Litigation was filed by the RIAA on June 3, 2003 with a courtesy copy served by facsimile on counsel for the Market, Matthew McCrink, Esq. on June 19, 2003.  (Farm Family Counter-statement of Undisputed Facts ¶¶ 9-12.)  Counsel for Plaintiffs sent Farm Family a copy of the Complaint on April 7, 2004 and again on July 7, 2004.  (PSUF ¶ 60.)  On July 2, 2004, Plaintiffs made a demand on Lloyd's, requesting that a defense and indemnification be provided for the underlying Complaint.  (Lloyd's Br. at Ex. 4; PSUF ¶ 61.)  It is undisputed that Lloyd's sent a letter to counsel on July 14, 2004 denying coverage, (Lloyd's Br. at Ex. 5.), and Farm Family also denied coverage in a letter dated September 14, 2005.  (PSUF ¶ 62-63.)  In the Farm Family denial letter, Liability Specialist Sharon Shipley wrote that "[i]f Columbus Farmers Market advertised that its vendors sold pirated compact discs...the policy might be implicated."  (Id. ¶ 64.)  Overall, Plaintiffs

12

indicated that they have incurred over $1,000,000 in defense costs and have had to retain and pay for counsel to defend them in the Arista Litigation.  (Id. ¶ 65-66; Farm Family Counter-statement of Undisputed Facts ¶ 35.)

### E.    __Procedural History__

On April 15, 2005, Plaintiffs filed this action seeking a declaration that Farm Family, Tweedie and Lawrence are obligated to defend them in the Arista Litigation.  [Docket Item No. 1.] Plaintiffs filed a motion for partial summary judgment on the duty to defend issue.  [Docket Item No. 12.]  Lloyd's also filed a motion for summary judgment. [Docket Item No. 14.]  Farm Family filed its opposition to Plaintiffs' motion and a cross-motion for summary judgment on the issue of Farm Family's duty to indemnify. [Docket Item Nos. 15, 17.]  In reply to their own motion for summary judgment and opposition to the motions for summary judgment filed by Farm Family and Lloyd's, Plaintiffs filed a reply brief, [Docket Item No. 18], to which Farm Family and Lloyd's responded. [Docket Item Nos. 20, 21.]  The Court heard oral argument on November 21, 2006, and received supplemental submissions thereafter (Docket Item Nos. 27-32) which have been considered.

## II.   SUMMARY JUDGMENT STANDARD

Plaintiffs, Farm Family and Lloyd's all move for summary judgment pursuant to Rules 56, Fed. R. Civ. P.  A court may grant

13

summary judgment when the materials of record "show that there is
no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119
(3d Cir. 1983).  A dispute is "genuine" if "the evidence is such
that a reasonable jury could return a verdict for the non-moving
party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  A fact is "material" only if it might affect the outcome
of the suit under the applicable rule of law.  See id.  Disputes
over irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  Id.[6]

The summary judgment standard does not change when the
parties have filed cross-motions for summary judgment.  See
Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987).
Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is
> entitled to summary judgment, and the making of such
> inherently contradictory claims does not constitute an
> agreement that if one is rejected the other is
> necessarily justified or that the losing party waives
> judicial consideration and determination whether
> genuine issues of material fact exist.

---

[6]  Moreover, a non-moving party must do more than rely only
"upon bare assertions, conclusory allegations or suspicions."
Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied,
474 U.S. 1010 (1985) (citation omitted); see Liberty Lobby, 477
U.S. at 249-50.  Thus, if the non-moving party's evidence is a
mere scintilla or is "not significantly probative," the court may
grant summary judgment.  Liberty Lobby, 477 U.S. at 249-50;
Country Floors, 930 F.2d at 1061-62.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d
555, 560 (3d Cir. 2001) (citing Rains v. Cascade Indus., Inc.,
402 F.2d 241, 245 (3d Cir. 1968)).  If review of cross-motions
for summary judgment reveals no genuine issue of material fact,
then judgment may be entered in favor of the party deserving of
judgment in light of the law and undisputed facts.  See Iberia
Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998)
(citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d
139, 145-46 (3d Cir. 1988)).

## III. DISCUSSION

In deciding the three pending motions for summary judgment,
the Court must address four issues.  First, the Court must
determine whether the insurance policies at issue provide
coverage (either a duty to defend or a duty to indemnify) for the
underlying claims under the policies' "advertising injury"
coverage provision.  Related to this is the issue of whether
coverage is excluded under any of the defenses raised by Lloyd's
and Farm Family.  Third, if the Court holds that Lloyd's and Farm
Family have a duty to defend, the Court must determine how the
amount due is to be allocated between the two Lloyd's
underwriters and Farm Family.  Finally, the Court must address
Lloyd's and Farm Family's arguments related to whether they have
a duty to indemnify Plaintiffs for any losses suffered as part of
the Arista Litigation.

15

**A.    <u>Preliminary Matters</u>**

Before addressing the four central issues in this case, the Court must address three preliminary matters.  First, the parties do not dispute that New Jersey law is controlling on the issues presented before the Court.  In a diversity action, the federal courts determine the substantive law to be applied by looking to the choice of law rules of the forum state.  <u>See</u> <u>Van Dusen v. Barrack</u>, 376 U.S. 612 (1964).  In the present matter, the forum state is New Jersey and therefore New Jersey choice of law rules apply.  Under New Jersey choice of law rules and application of the "significant relationship" tests, New Jersey contract law applies.  <u>Restatement (Second) of Conflict of Laws</u> ¶ 188 (1971); <u>Rohm & Hass Co. v. Adco Chem. Co.</u>, 689 F.2d 424, 429 (3d Cir. 1982).

Second, under New Jersey law the interpretation of an insurance contract is a question for the court to decide as a matter of law and can be resolved on summary judgment. <u>See</u> <u>Longobardi v. Chubb Ins. Co.</u>, 121 N.J. 530, 537 (1990); <u>Adron, Inc. v. Home Ins. Co.</u>, 292 N.J. Super. 463, 473 (App. Div. 1996). Moreover, when the court interprets an insurance contract "[t]he coverage language . . . generally should be construed liberally in favor of the insured and strictly against the insurer to provide 'full coverage of the indicated risk rather than narrow protection.'" <u>Salem Group v. Oliver</u>, 248 N.J. Super. 265, 271

16

(App. Div. 1991)(quoting <u>Sinopoli v. North River Ins. Co.,</u> 244
N.J. Super. 245, 250 (App. Div. 1992)).  Finally, under New
Jersey law, ambiguous contractual language is construed in favor
of the insured and against the insurer.  <u>See</u> <u>Doto v. Russo</u>, 140
N.J. 544, 556 (1995).  For example, in <u>Mazzilli v. Acc. & Cas.</u>
<u>Ins. Co.</u>, 35 N.J. 1, 7 (1961), the New Jersey Supreme Court held
that "[i]f the controlling language will support two meanings,
one favorable to the insurer, and the other favorable to the
insured, the interpretation sustaining coverage must be applied."

### B.   Whether the Insurance Policies Provide Coverage under the "Advertising Injury" Coverage Provision

#### 1.   Parties' Positions

In their motion for partial summary judgment, Plaintiffs
argue that Defendants have a duty to defend Plaintiffs pursuant
to the "advertising injury" coverage contained in the four
insurance policies at issue.  Plaintiffs argue that an insured is
covered under an "advertising injury" provision if (1) there is a
causal connection between the advertising and the injury and (2)
the injury falls within one of the categories defined by the
policy.  (Pls.' Br. at 12-13 citing <u>Tradesoft Tech., Inc. v.</u>
<u>Franklin Mut. Ins. Co.</u>, 329 N.J. Super. 137, 152 (App. Div.
2000)).

According to the policies at issue, advertising injury
includes "injury arising out of . . . [i]nfringement of
copyright, title or slogan."  Specifically, the policies provide

17

coverage for advertising injury arising out of "infringement of copyright," and that is exactly the claim asserted by the RIAA against Plaintiffs and the Market in the Arista Litigation. Second, Plaintiffs argue that, because the policies all provide that "[t]his insurance applies to . . . 'advertising injury' caused by an offense committed in the course of advertising your goods, products or services . . . .," coverage depends, in part, upon allegations of "advertising."  The policies, however, fail to define "advertising."  No matter the definition, according to Plaintiffs, there is no question that the allegations in the complaint in the Arista Litigation (the Second Amended Complaint ("SAC")) -- namely Paragraph 33, which states that Plaintiffs "advertise and promote the Columbus Farmers Market, including advertising on their website the availability of sound recordings on the premises" -- fall within the definition of the term. Moreover, Plaintiffs argue that the RIAA also alleges that word of mouth advertising has had the effect of drawing consumers to the Market.  (Pl.'s Statement of Undisputed Facts).

The counter-arguments of Defendants Lloyd's and Farm Family mirror each other.[7]  Defendants argue that Plaintiffs have failed

---

[7]  Lloyd's argument, however, proceeds in two parts.  First, Lloyd's argues that there is no duty to defend under the policies in place from July 1, 2000 through July 1, 2003.  (Lloyd's Br. at 26-32.)  Next, Lloyd's argues that there is no duty to defend under the policy in place from July 1, 2003 to July 1, 2004. Plaintiffs concede that there is no coverage under the policy for the July 1, 2003 to July 1, 2004.  As such, Plaintiffs' motion

to satisfy their burden "to bring [their] claims within the terms
of the policy."  Sears Roebuck and Co. v. Nat'l Union Fire Ins.
Co., 340 N.J. Super. 223, 234 (App. Div. 2001).  Moreover,
Defendants contend that, in considering Plaintiffs' claim for
coverage, the words of an insurance policy should be given their
ordinary meaning.  Longobardi, 121 N.J. at 537.  Applying this
"ordinary meaning" standard when the Court compares the insurance
policy language to the allegation in the SAC, the Court will
conclude that there is no coverage and no duty to defend.

In particular, Defendants focus on the phrase in the policy
that states:

> b. This insurance applies to:
>
>> (2) "Advertising injury" caused by an offense
>> committed in the course of advertising your goods,
>> products or services . . . .

(Lloyd's Br. at Ex. 2.)  According to Defendants, the critical
step in interpreting the policy language is whether there is a
causal relationship between the advertising and the injury,
(i.e., that the "advertising injury" must be caused by an offense
committed in the course of Plaintiffs advertising their goods,
products or services.)  According to Defendants then, the focus
of the "advertising injury" analysis is not whether a copyright
infringement occurred in an underlying sale of a product, but

---

for partial summary judgment will be denied as to any claim
arising under the July 1, 2003 through July 1, 2004 insurance
policy.

whether the copyright infringement occurred *in the actual advertising itself*.  According to Defendants, there can be no "advertising injury" at issue in the Arista Litigation because the RIAA did not allege that the copyright infringement was contained within the advertisement of Plaintiff's Market.[8]

Defendants cite Information Spectrum, Inc. v. The Hartford, 182 N.J. 34, 37 (2004), in which a unanimous New Jersey Supreme Court specifically interpreted policy language identical to that contained in the present case as follows:

> For the "advertising injury" provision of the policy to apply, the harm alleged must be "caused by" the advertising act itself and not by the underlying purloinment.

Information Spectrum, 182 N.J. at 36.  Thus, according to Defendants, for an advertising injury to occur, the actual harm must occur in an act of advertising itself, not in the underlying sale of infringing CDs.  Finally, Defendants argue that the policies do not provide blanket liability coverage for any copyright infringement; rather the policies only cover instances

---

[8]  Lloyd's cites Information Spectrum which states that "whether a duty to defend attaches in this context requires not only that the injury fall within one of the four categories (which only the copyright infringement does) but also a determination of whether the claimant asserts that an injury was caused by the insured's advertising of its goods and services." Information Spectrum, 364 N.J. Super. at 66.

where copyright infringement occurs in the course of advertising, which is not alleged in the Arista Litigation.[9]

## 2.   Analysis

_____Under New Jersey law, an insurer's duty to defend is separate and distinct from, and broader than, the duty to indemnify.  See Conduit & Found. Corp. v. Hartford Cas. Ins. Co., 329 N.J. Super. 91, 106 (App. Div. 2000).  Indeed, an insurer is "bound to defend the insured against suits alleging facts and circumstances covered by the policy, even though such suits are groundless, false or fraudulent."  Danek v. Hommer, 28 N.J. Super. 68, 76 (App. Div. 1953).  The duty to defend is "determined by whether the allegations set forth in the

---

[9]   Defendants argue that the case of Bank of the West v. Superior Court of Contra County, 2 Cal. 4th 1254 (1992) is persuasive as the California Supreme Court reviewed the scope of coverage for an advertising injury in response to the insured's argument that when there is "any connection, however remote" between the insured's advertisement and the harm to the underlying plaintiff, there should be coverage.  (Lloyd's Br. at 31.)  As in Information Spectrum, the California Supreme Court rejected this argument, noting that "as a matter of common sense, an objectively reasonable insured would not expect 'advertising injury' coverage to extend as far as [plaintiff] argues it should extend."  Bank of the West, 2 Cal. 4th at 1268.  Specifically, the court held that:

> Virtually every business that sells a product or service advertises, if only in the sense of making representations to potential customers.  If no causal relationship were required between "advertising activities" and "advertising injuries," then "advertising injury" coverage, alone, would encompass most claims related to the insured's business.

Id. at 1276.

complaint's pleadings fall within the purview of the policy language" and is not based upon the merits of the claim.  LCS Inc. v. Lexington Ins. Co., 371 N.J. Super. 482, 490 (App. Div. 2004).  Important to this action, the New Jersey Appellate Division has held that if the allegations of the complaint are ambiguous, doubts as to coverage must be resolved in favor of the insured.  Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173-74 (1992) (citing Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group, 232 N.J. Super. 467, 470 (App. Div. 1989)); see also Vickers, Inc.v. Seabord Sur. Co., No. 94-3864, 1996 U.S. Dist. LEXIS 19689, at *10 (D.N.J. Feb. 5, 1996).  Finally, the analysis of the allegations is not limited to the complaint, itself, but rather "facts outside the complaint may trigger the duty to defend . . . ."  SL Indust., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 198-99 (1992).

        Under New Jersey law, an "advertising injury" provision requires the insurer to provide coverage and triggers a duty to defend only if there is "(1) a causal connection between the advertising and the injury" and (2) the injury "fall[s] within one of the four categories defined by the policy."  Tradesoft Tech., Inc. v. Franklin Mut. Ins. Co., 329 N.J. Super. 137, 152 (App. Div. 2000).  Indeed, for a particular injury to be covered under an "advertising injury" provision of an insurance policy, "there must be an allegation that the claimed injury was 'caused

22

by' an offense committed 'in the course of advertising.'"
Information Spectrum, Inc., 182 N.J. at 37.  In Information
Spectrum, the New Jersey Supreme Court quoted the New Jersey
Appellate Division with approval:

> In recognizing in Tradesoft that the primary question
> turns on the insured's advertising as a cause of the
> claimant's harm, we relied upon the succinct comment of
> the court in Simply Fresh Fruit, Inc. v. Continental
> Ins. Co., 94 F.3d 1219, 1229 (9th Cir. 1996) to
> illustrate the thrust of the advertising injury
> provision: in order to invoke coverage "the advertising
> activities must cause the injury - not merely expose
> it."  As a result, in ascertaining whether a duty to
> defend has been triggered by a claim against the
> insured, the claim must be examined for allegations of
> injuries caused by the insured's advertising.

Id. at 37 (aff'g and quoting Information Spectrum, Inc. v. The
Hartford, 364 N.J. Super. 54, 66 (App. Div. 2003)).  Moreover,
"[f]or the 'advertising injury' provision of the policy to apply,
the harm alleged must be 'caused by' the advertising act itself
and not by the underlying purloinment."  Id. at 38.  Thus, under
Information Spectrum, the test is whether the relationship
between the advertising activity and the copyright holder's
injury is causal or incidental.  Id.  If it is causal, there is
coverage; if the advertising activity is only incidental, then
there is no coverage.  Id.

Here, the Court finds that Defendants do have a duty to
defend Plaintiffs in the Arista Litigation.  It is undisputed
that the injury (infringement of copyrights) falls within one of

23

the four categories defined in the policies as an "advertising
injury."  The more complex issue is whether the relationship
between the advertising activity and the copyright holders'
injury is causal or incidental.  Here, the Court finds that the
relationship alleged in the Arista Litigation is causal.  In the
present case, the RIAA alleged that Plaintiffs are liable for
contributory infringement.  An essential element of contributory
infringement is that Plaintiffs "materially contributed" to
direct infringement (the sale of counterfeit and pirated CDs).
According to the complaint in the Arista Litigation, Plaintiffs
"materially contributed" by, among other things, advertising and
promoting the Market.  (Pl.'s Br. at Ex. 16, ¶ 33)(Plaintiffs
"advertis[ed] on their web site the availability of sound
recordings on the premises").  Moreover, in this Court's March
31, 2006 Opinion and Order in the Arista Litigation, the Court
held that the Corporate Plaintiffs materially contributed to
copyright infringement by, in part, "provid[ing] extensive
advertising for the Market (including maintaining a web site and
organizing holiday-themed events) and work[ing] to attract
customers to the Market . . . ."  Id. at *52.  Because the RIAA
specifically claims that Plaintiffs contributed to infringement
by advertising, Plaintiffs have shown the requisite causal link

24

between the advertising activity and the offense (copyright infringement).[10]

     This conclusion is not changed if, from the Arista Litigation complaint, it was unclear whether the RIAA alleged that Plaintiffs' advertising was a cause of their injury.  New Jersey law is clear that, if the allegations in the complaint are ambiguous, "doubt as to coverage will be resolved in favor of the insured."  <u>Central Nat'l Ins. Co.</u>, 232 N.J. Super. at 470. Defendants' duty to defend was covered.

     Defendants' argument that a duty to defend arises only when the copyright injury occurs in the advertising itself is unpersuasive.  Neither New Jersey law nor the language of the policies demands that the copyright injury occur in the advertising itself.  First, the New Jersey Supreme Court in <u>Information Spectrum</u> states that "the primary question turns on the insured's advertising as a cause of the claimant's harm."

---

[10]   This conclusion is consistent with the holding of the New Jersey Supreme Court in <u>Information Spectrum</u> because this case is distinguishable from <u>Information Spectrum</u>.   In <u>Information Spectrum</u>, the insured was accused of direct copyright infringement (the sale of infringing software) and the copyright holder never alleged that advertising engendered that injury. <u>Information Spectrum,</u> 182 N.J. at 36, 37-38.  Here, in contrast, the RIAA is claiming Plaintiffs are liable for contributory copyright infringement and have specifically alleged that Plaintiffs' advertising activities caused the RIAA's injuries (as this is how Plaintiffs "materially contributed" to the underlying infringement).  Quite clearly, as RIAA alleged and proved, the Corporate Plaintiffs' advertising conduct was a key ingredient in their contributory copyright infringement.

Information Spectrum, 182 N.J. at 37.  New Jersey law requires only that an insured's advertising activities be a cause (but not necessarily the cause) of the copyright holder's alleged injuries.  Id.  The Information Spectrum decision does not suggest that the infringement must be contained within the "four corners" of the advertisement.  Second, the language of the insurance policies does not demand that copyright infringement occur in the advertising itself.  To the contrary, the language of the policy is broad, defining "advertising injury" as "injury arising out of one or more of the following offenses: . . . [i]nfringement of copyright, trade dress or slogan."  Evidence that the policy language is broader than Defendants advocate here is demonstrated by the fact that, prior to Plaintiffs entering into the July 1, 2003 policy, Lloyd's substantially tightened the language of Section V.1 of the policy to limit "advertising injury" to injuries arising out of the infringement of copyright, patent and trademark "in your advertisement."  If the language in the pre-July 1, 2003 language had been as narrow as Defendants argue, Lloyd's would have had no need to change the language.

Finally, if the language of the policies was limited to copyright injury contained within the four corners of the advertising, Sections V.1.c and V.1.d of the policies would have been redundant.  Section V.1.c. states that "advertising injury" means injury arising out of the offense of "misappropriation of

26

advertising ideas or style of doing business."  This portion of the definition appears to be directed at the situation where an insured misappropriates another's intellectual property to be used in the insured's advertising.  There can be no doubt that this definition would significantly overlap with Section V.1.d (which states that "advertising injury" means "[i]nfringement of copyright, trade dress or slogan) should Section V.1.d be interpreted in the narrow manner advocated for by Defendants.

As such, this Court holds that Defendants have a duty to defend Plaintiffs in the Arista Litigation under the "advertising injury" provision.

**C.  Defendants' Defenses and Arguments for Exclusions**

**1.  Exclusion under the "Known Loss" Doctrine**

According to Defendants, the known loss doctrine bars Plaintiffs from seeking coverage under the insurance policies. That is, if the insured has actual knowledge of liability for the conduct they are engaging in, at the time they enter into the insurance policy, coverage for this liability is excluded. (Lloyd's Br. at 34.)  Defendants point out that the SAC alleges that Plaintiffs acted in a knowing and intentional manner when they continuously engaged in contributory and vicarious copyright infringement.  According to Defendants, knowledge of infringement can be imputed to Plaintiffs as early as 1993 and the specific conduct alleged in the SAC began in June 2000 and continued

through June of 2003.  Because the earliest coverage under any
policy at issue in this case was July 1999, the "known loss"
doctrine allegedly applies to bar coverage.  Allowing coverage,
according to Defendants, would be to permit Plaintiffs to engage
in what is tantamount to insurance fraud (that is, Plaintiffs
would seek to insure against a knowing and intentional ongoing
loss that occurred prior to the inception of any of Defendants'
policies.)

     This Court disagrees.  The "known loss doctrine" is a common
law concept providing that "one may not obtain insurance for a
loss that either has already taken place or is in progress."
Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co., 124 F.3d
508, 516 (3d Cir. 1997)(citing 12 John A. & Jean Appleman,
Insurance Law & Practice § 7001 (rev. ed. 1981)).[11]  As pointed
out by the Third Circuit Court of Appeals, the state courts are
divided as to the scope of the known loss doctrine and that
"[u]nfortunately, we do not know how broadly or narrowly the New
Jersey Supreme Court would construe the doctrine because it has
not yet resolved this issue."  Id.

     The New Jersey Appellate Division, however, has addressed
this issue in Astro Pak Corp. v. Fireman's Fund Ins. Co., 284

---

     [11]  The Pittston court recognized that "[t]he rule is based
on the realization that the purpose of insurance is to protect
insureds against unknown risks."  Id. (quoting Appalachian Ins.
Co. v. Liberty Mut. Ins. Co., 676 F.2d 56, 63 (3d Cir. 1982)).

28

N.J. Super. 491 (App. Div. 1995).  In <u>Astro Pak</u>, the Appellate
Division held that an insured's awareness of a situation is not
sufficient to create a presumption of actual or constructive
knowledge of the insured's potential liability.  <u>Id.</u> at 1117.
Indeed, the <u>Astro Pak</u> court rejected the view that knowledge of a
possible environmental contamination equates with knowledge of an
insured claim.  <u>Id.</u>  The Third Circuit's holding in <u>Pittston</u> is
similar. <u>See</u> 124 F.3d 508, 518.  Predicting the rule that is
likely to be adopted by the New Jersey Supreme Court,[12] the Third
Circuit held that "the known loss doctrine will bar coverage <u>only</u>
when the legal liability of the insured is a <u>certainty</u> . . . ."
<u>Id.</u> (emphasis added).  In so holding, the Third Circuit adopted
the rule set forth by the Supreme Court of California that the
known loss doctrine "will not defeat coverage for a claimed loss
where it had yet to be established, at the time the insurer
entered into the contract of insurance with the policyholder,
that the insured had a legal obligation to pay damages to a third
party in connection with a loss."  <u>Id.</u> at 518 (quoting <u>Montrose</u>
<u>Chem. Corp. of Cal. v. Admiral Ins. Co.</u>, 913 P.2d 878, 906
(1995)(en banc)).

---

[12]  When the Third Circuit Court of Appeals must resolve an
issue that the New Jersey Supreme Court has yet to resolve, the
Third Circuit must "do our best to predict how [the New Jersey
Supreme Court] would" resolve the issue.  <u>Pittston</u>, 124 F.3d at
516 (citing <u>New Castle County v. Hartford Accident & Index. Co.</u>,
933 F.2d 1162, 1168 (3d Cir. 1991)).

In the complaint in the Arista Litigation, the RIAA alleged
that copyright infringement occurred at the Market on several
occasions from June of 2000 through April and May of 2003 and the
RIAA investigators observed the sale of infringing goods in 1993
and 1994.  (PSUF ¶ 43); see also Arista Records, 2006 U.S. Dist.
LEXIS 14988 at *16.  The RIAA's claims are based on raids made on
the Market or the RIAA's own investigations.  However, simply
because vendors at the Market were selling counterfeit and
infringing goods (and thus infringing RIAA copyrights) does not
mean that "legal liability of the insured is a certainty,"
Pittston, 124 F.3d at 518, or that "the insured had a legal
obligation to pay damages to a third party in connection with a
loss."  Montrose Chem Corp., 913 F.2d at 906.  To the contrary,
it was not until 2006 -- almost three years after the end of the
insurance policy coverage at issue in this case -- that any legal
liability attached to the Plaintiffs.  Specifically, this Court's
March 31, 2006 Opinion and Order created legal liability for
contributory copyright infringement and vicarious liability (with
such liability being limited to the Corporate Plaintiffs).
Arista Records, 2006 U.S. Dist. LEXIS 14988 at *45, 52.  Finally,
given that the issue of whether a flea market owner could be held
vicariously liable for copyright infringement of vendors at the
market was one of first impression in the Third Circuit,
Plaintiffs certainly could not have concluded to any "certainty"

that they would be liable for contributory infringement under the claims made in the Arista Litigation even as early as June 2003 when the RIAA filed its complaint.  As such, the known loss doctrine does not serve to exclude Plaintiffs' claim from coverage.

### 2.   Late Notice and Prejudice Obviate the Duty to Defend

Next, Farm Family argues that, because Plaintiffs were late in notifying Farm Family of the original Complaint, Farm Family is not obligated to defend Plaintiffs.  According to Farm Family, its insurance policy requires that the insured provide notice of a potential claim or suit as soon as practicable.  (Farm Family Counter-statement of Undisputed Facts ("FFCSUF") ¶ 9-12.)  Under New Jersey law, insurance policy notice provisions will be upheld in instances of prejudice to the insured.  See Cooper v. Gov't Employees Ins. Co., 51 N.J. 86, 94 (1968).

Here, the RIAA first provided written notice to Plaintiffs of the fact that Market vendors were selling infringing sound recordings and Plaintiffs' own infringement of the Copyright Act on June 16, 2000.  Arista Records, 2006 U.S. Dist. LEXIS 14988 at *17.  Nearly three years later, on June 3, 2003, the RIAA filed its original complaint.  Farm Family, however, was not officially notified of the action until April of 2004.  According to Farm Family, Plaintiffs failed to explain why (1) nearly one year went by after the RIAA filed its complaint and (2) nearly three years

31

went by after the RIAA notified Plaintiffs in writing of
infringing activities at the Market before the Defendants were
notified of the claims against Plaintiffs.  (FFCSUF ¶ 9-12.)
Farm Family also argues that they have been prejudiced because
Plaintiffs filed an Answer -- in which Plaintiffs admitted a
number of things that formed the basis for this Court's grant of
partial summary judgment against the Corporate Plaintiffs, see
Arista Records, 2006 U.S. Dist. LEXIS 14988 at *17, -- prior to
Plaintiffs notifying them of the suit.  Finally, Farm Family also
argues that it has been prejudiced because, prior to being
notified about the RIAA's complaint, Plaintiffs waived their
right to bring a motion to dismiss under Fed. R. Civ. P.
12(b)(5)(insufficiency of process) relating to the alleged
infringing recordings seized on June 4, 2000.  (Farm Family Opp.
Br. at 17-19.)

     Given Farm Family's actions in the present case, the Court
does not see how Farm Family was prejudiced in defending
Plaintiffs in the Arista Litigation or how Plaintiffs providing
earlier notification to Farm Family would have impacted the
course of the Arista Litigation.  In order to show prejudice
resulting from a late notice from an insured under New Jersey
law, the insurer must show that it is likely that the case would
have come out differently had it been involved earlier.  See
Trustees of Univ. of Penn. v. Lexington Ins. Co., 815 F.2d 890,

32

898 (1987); <u>Cooper v. Gov't Employees Ins. Co.</u>, 51 N.J. 86, 94
(1968).  It is true that, in hindsight, Farm Family points out
several questionable strategy decisions made by Plaintiffs'
counsel in the early stages of the Arista Litigation, but Farm
Family has failed to show that the late notice has prejudiced
them.  In fact, Farm Family -- who now takes the position that
there was no duty to defend under the insurance policy -- cannot
argue that, had it been notified on the action earlier, it (1)
would have become involved with the lawsuit and (2) that the
outcome would have been different had it been involved.  From
Farm Family's own conduct, it is clear that it would have
declined to defend in any event, even if it had received earlier
notification of the suit, because it found the Arista Litigation
allegations to not trigger a duty to defend.  As such,
Plaintiffs' claim that the Defendants have a duty to defend are
not excluded under any late notice provision in the policies.

### 3. Farm Family's Policy Excludes Violations of Penal Law

Next, Farm Family argues that coverage is excluded under
Farm Family's insurance policy because the policy excludes
"'advertising injury' . . . [a]rising out of the willful
violation of a penal statute or ordinance committed by or with
the consent of the insured . . . ."  (Pl.'s Br. at Ex. 8, Section
I.B.2(a)(3)).  According to Farm Family, the possibility that
this Court can, under the Copyright Act, impose $150,000 in

33

damages for the sale of a $10 good is penal.  See 17 U.S.C.
504(c)(1).  Moreover, Farm Family cites Bank of the West, in
which the California Supreme Court held that "[w]hen the law
requires a wrongdoer to disgorge money or property acquired
through a violation of the law, to permit the wrongdoer to
transfer the cost of disgorgement to an insurer would eliminate
the incentive of obeying the law."  Bank of the West, 2 Cal. 4th
at 1270.

Under the present circumstances, coverage cannot be excluded
under Section I.B.2(a)(3) for two reasons.  First, Farm Family
has presented no evidence to suggest that Plaintiffs acted
willfully in violating any statute including the Copyright Act.
Second, although the SAC does seek substantial statutory damages
pursuant to 17 U.S.C. § 504(c), courts in other jurisdictions
have held that the statutory damages provision of the Copyright
Act is not penal.  See Raydiola Music v. Revelation Rob, Inc.,
729 F. Supp. 369, 375 (D. Del. 1990)("the statutory damages
provision of the Copyright Act is neither a penalty or a
forfeiture"); see Wood v. Crosby Arboretum Found., 793 F. Supp.
716, 718 (S.D. Miss. 1992)(statutory damages are remedial in
nature, not penal).  Thus, the exclusions under the policy do not
relieve either Lloyd's or Farm Family from their obligation to
defend Plaintiffs.  Furthermore, the Court finds that Farm
Family's citation of Bank of the West unpersuasive as the RIAA

34

does not seek actual damages or to use the Copyright Act to require Plaintiffs "to disgorge money or property acquired through a violation of the law" in the Arista Litigation.  <u>Bank of the West</u>, 2 Cal.4th at 1270.  Rather, the RIAA seeks statutory damages from Plaintiffs as a remedial measure.

> **4.   Columbus Flea World is Not a Named Insured Under the Farm Family Policy**

Farm Family argues that, because the insurance application did not mention Columbus Flea World, LLC and Columbus Flea World LLC is neither the applicant for the policy or a named insured to the Farm Family policy, the policy does not cover them.  (Farm Family Opp. Br. at 19-20.)   According to Farm Family, despite declarations by Pratt and Ackerman that: (1) they were involved in purchasing the insurance policy at issue; (2) Columbus Flea World LLC owns 200 acres of land in Columbus, New Jersey; (3) Columbus Flea World LLC is an operating company that leases the outdoor portion of the land and operates the outdoor flea market; and (4) Ackerman and Pratt intended to purchase insurance to cover both Columbus Flea Market, LLC and Columbus Flea World, LLC, Columbus Flea World, LLC was not mentioned on the application for insurance.  Furthermore, Columbus Flea World did not even begin operating until January 1, 2000 – some six months after Farm Family had issued its policy to Columbus Farmers Market, LLC.

35

The Court agrees with Farm Family.  It is clear that
Columbus Flea World, LLC is not covered under Farm Family's
policy and therefore cannot make a claim under it.  The most
compelling argument for lack of coverage is that the corporate
entity Columbus Flea World LLC was not created until November 12,
1999 -- more than four months after Farm Family issued the
policy.  Moreover, Columbus Flea World, LLC did not appear to
have started operating until January 1, 2000 when Columbus Flea
World, LLC entered into a license agreement with Columbus Farmers
Market, LLC which gave Columbus Flea World, LLC the "sole and
exclusive right to supervise and conduct the flea market" in the
outdoor portion of the Market.  Thus, Columbus Flea World LLC did
not begin operating until six months after the policy was issued.
Finally, there is no evidence that Plaintiffs ever attempted to
amend the Farm Family policy to add Columbus Flea World, LLC as a
named insured.

While it is clear that Columbus Flea World, LLC is not
covered under the Farm Family policy, the impact of this fact on
whether or not Farm Family has a duty to defend is less clear.
In its brief, Farm Family argues only that the fact that Columbus
Flea World, LLC is not covered under the Farm Family policy
"mitigate[s] against the duty to indemnify and defend" all of the
Plaintiffs "collectively."  Likewise, the potential impact of
this fact on Farm Family's duty to defend is not addressed by

36

Plaintiffs.  This Court can imagine circumstances where the fact that a Plaintiff is not a named insured is critical to a court's determination about the insured's duty to defend.  Here however, the Court finds that it has little effect on Farm Family's duty to defend in this case.

The Farm Family insurance policy names Columbus Farmers Market LLC as the applicant and Flea World LLC as an additional insured.  Thus, Farm Family has a duty to defend these two entities, both of whom were named by the RIAA in the SAC in the Arista Litigation.  In addition, Farm Family does not dispute that Ackerman and Pratt are insured under the policy as members of Columbus Farmers Market LLC.  (PSUF ¶ 17.)  These individuals were also named in the RIAA's complaint.  Thus, although no duty to defend may have been triggered for Columbus Flea World, LLC, such a duty did arise with respect to Columbus Farmers Market, LLC, Ackerman and Pratt, three of the four named plaintiffs in this action.  As such, with respect to Farm Family's duty to defend, the fact that Columbus Flea World, LLC was not a named insured has no practical effect of Farm Family's duty to defend the three other named Plaintiffs (Columbus Farmers Market, LLC, Ackerman and Pratt).  The Court finds simply that Farm Family owed no duty to defend or indemnify Columbus Flea World, LLC, in the Arista Litigation.

**D.    Allocating the Defense Costs if this Court Finds a Duty to Defend**

Because this Court will grant Plaintiffs' motion for partial summary judgment on the issue of Defendants' duty to defend, this Court must address the issue of how the defense costs should be allocated among the three underwriters.  For purposes of allocating Plaintiffs' defense costs among Defendants, three insurers are involved: (1) Farm Family (who provided coverage from July 1999 to July 2000); (2) J.A. Tweedie (Lloyd's) (who provided coverage from July 2000 - July 2002); and (3) Lawrence (Lloyd's) (who provided coverage from July 2002 - July 2003).

According to Plaintiffs, this "time-on-the-risk" apportionment technique is not applicable in situations like this where the covered occurrences can be assigned to specific policy periods.  See Taco Bell Corp. v. Cont'l Cas. Co., 2003 U.S. Dis. LEXIS 4289, *42-43 (N.D. Ill. 2003)(holding that the "time-on-the-risk" apportionment technique "is only appropriate . . . where 'a single continuous occurrence results in an unallocable loss implicating successive policy periods.'")  Instead, according to Plaintiffs, the Taco Bell court looked to the insurers' policy language, particularly those dealing with "other insurance" or "sharing." Id. at *44-45.  According to Plaintiffs, New Jersey law is not inconsistent with the decision in Taco Bell.  See Sonoco Prods. Co. v. Fire & Cas. Ins. Co. of Ct., 337 N.J. Super. 568 (App. Div. 2001).  As such, in the

38

instant case, Plaintiffs advocate that the Court look to the terms of the policies which have "other insurance" clauses.  The policies here state that "[i]f all of the other insurance permits contribution by equal shares, we will follow this method also." (PSUF ¶ 26.)  According to Plaintiffs, this provision requires all three insurers to contribute equally to Plaintiffs' defense costs.

Farm Family argues that this Court should not follow Plaintiffs' proposed method because the method is based on an unreported decision from the Northern District of Illinois.  <u>See</u> <u>Taco Bell Corp.</u>, 2003 U.S. Dist. LEXIS at *1.  Instead, the Court should apply the "time-on-the-risk" apportionment technique set out in <u>Owens-Illinois, Inc. v. United Ins. Co.</u>, 138 N.J. 437 (1994).  Also, according to Farm Family, because no raids on the Market occurred during the insured period, the insurance clause in its insurance policy relating to sharing costs is not applicable.

This Court agrees with Farm Family that Plaintiffs' motion should be denied as to the issue of apportionment.  Under New Jersey law, "any allocation should be in proportion to the degree of the risks transferred or retained during the years of exposure."  <u>Id.</u> at 475.  The Court cannot stray from established New Jersey law regarding the allocation of defense costs. Because Defendant Lloyd's however, has not yet taken a position

39

on how the defense costs should be allocated, the Court will deny
Plaintiffs' motion on this issue and allow Lloyd's an opportunity
to argue how the costs should be apportioned among the three
underwriters.  Thus, the Court shall order each party to submit
supplemental briefing on this issue (each brief being no more
than ten (10) pages in length), tied to the facts of this case,
applying New Jersey law, to be filed with the Clerk no more than
30 days from the date of this Opinion.  Upon receipt and review
of all submissions, the Court will make its determination on the
allocations of defense costs among the underwriters in a
supplemental opinion.

     **E.**    **<u>Defendants' Duty to Indemnify.</u>**

    Lloyd's argues that, under New Jersey law, when there is no
duty to defend, the question of a duty to indemnify is never
reached because the duty to defend is broader then the duty to
indemnify.  Lloyd's cites <u>Hartford Ins. Group v. Marson Const.
Corp.</u>, 186 N.J. Super. 253, 257-260 (App. Div. 1982) for the
proposition that:

> As a general proposition, it is clear that under the
> typical liability policy, the duty of an insurer to
> defend is broader than its obligation to indemnify.
>
>         *    *    *    *
>
> Had the trial court been correct that Hartford had no such
> duty, it is clear that Hartford would also have had no duty
> to indemnify since it is only an obligation to indemnify,
> either actual or potential, which invokes the duty to
> defend.

According to Lloyd's, based on the holding of <u>Hartford</u>, if this Court finds that there is no duty to defend, there can be no duty to indemnify and Defendants' cross-motions for summary judgment on the duty to defend should be granted.

Because this Court has held <u>supra</u> that Defendants do have a duty to defend certain Plaintiffs in this action, Farm Family and Lloyd's cross-motions on the issue of the duty to indemnify will be denied.  The Court agrees with Defendants' legal position that, if the Court had granted Defendants' motion for summary judgement as to the duty to defend issue, the Court must also grant Defendants' motion for summary judgment on the duty to indemnify.  <u>See</u> <u>id</u>. at 257 (had "the trial court been correct that Hartford had no such duty, it is clear that Hartford would also have had no duty to indemnify since it is only an obligation to indemnify . . . .")  However, because the Court found Defendants had a duty to defend, Defendants' argument is moot. The Court does not reach the question of duty to indemnify at this time.

## III. CONCLUSION

For the reasons expressed in this Opinion Plaintiffs' motion for partial summary judgment on the issue of whether Defendants have a duty to defend will be granted in part and denied in part. The motion will be granted in part as the Court finds that Defendants did have a duty to defend under the insurance policies

41

in place between July 1, 1999 and July 1, 2003.  Plaintiffs'
motion will be denied in part, however, on the issues of whether
(1) Lloyd's underwriter Lawrence had a duty to defend under the
policy in place between July 1, 2003 and July 1, 2004 (as
Plaintiffs concede, Lloyd's underwriter Lawrence has no duty to
defend under the 2003-2004 insurance policy); (2) whether Farm
Family has a duty to defend Columbus Flea World, LLC (the Court
finds that Farm Family has no duty to defend Columbus Flea World,
LLC in the Arista Litigation); (3) Plaintiffs' proposed
allocation of defense costs.  Furthermore, the Court will order
the parties to submit supplemental briefing on this issue of
allocation of defense costs as discussed, _supra_.  Finally,
Defendant Lloyd's motion for summary judgment will be denied for
the pre-July 1, 2003 policies and granted for the July 1, 2003 to
July 1, 2004 policy and Defendant Farm Family's cross-motion for
summary judgment on the issue of the duty to indemnify will both
be denied with respect to Columbus Farmers Market, LLC and
granted with respect to Columbus Flea World, LLC.

    The accompanying Order is entered.


**December 21, 2006**           **s/ Jerome B. Simandle**
DATE                    JEROME B. SIMANDLE
                        United States District Judge